J. M. Burguieres Co., Ltd., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 8601.   Promulgated June 27, 1928.

*Irving R. Saal, Esq.,* and *Charles E. Wermuth, C. P. A.,* for the petitioner.

*A. S. Lisenby, Esq.,* for the respondent.

882

884

OPINION.

Trammell: The petitioner alleges that at May 31, 1917, the Kenilworth Sugar Co., hereinafter referred to for convenience as the debtor corporation, was indebted to it in the net sum of $50,999.85, which debt was ascertained to be worthless and charged off its books within that year. In its return for 1917, the petitioner claimed a deduction from gross income in said amount, which was disallowed by the respondent, and this action gave rise to that part of the deficiency here in dispute.

The deficiency letter does not disclose the ground on which the deduction in question was disallowed, and we are not advised in reference thereto. At the hearing, counsel for the respondent stated: "The respondent has disallowed the deduction, and for whatever reason is immaterial, the respondent's position being that the burden is upon the petitioner to show that it is entitled to the deduction. We do not admit any fact with reference to the transaction, except that this deduction was disallowed."

However, in his brief, the respondent suggests three reasons why the deduction should not be allowed, (1) because in a statement of open accounts due to the petitioner at December 31, 1916, attached to its 1917 income-tax return, there was no mention of any sum due to it from the Kenilworth Sugar Co.; (2) because the alleged debt was not ascertained to be worthless in 1917, since the debtor corporation had no assets after July 9, 1914, and the debt, if any, being worthless at that time, the petitioner should not be permitted to postpone the deduction out of all reasonable relation to the facts until 1917; and (3) because, if the alleged debt be held to be a bona

fide debt due to the petitioner, the amount of the indebtedness can not be ascertained for the reason that no evidence was offered to establish the fair market value, when received, of the 1,000 shares of stock of the Kenilworth Sugar Refining Co., having a par value of $100 per share, and for which the Kenilworth Sugar Company, the debtor corporation, received a credit of $10,000 on its account with the petitioner under date of May 31, 1917.

In respect of the first two grounds suggested by the respondent for disallowance of the deduction claimed, the evidence shows that the debt in question did not come into existence until 1917. The account of the Kenilworth Sugar Co. on the petitioner's books showed a credit balance of $3,608.37 at December 31, 1916. It is obvious, therefore, that the account could not properly have been listed on the statement of the petitioner's accounts receivable as of December 31, 1916, attached to its 1917 return. And for the same reason it is equally obvious that the indebtedness which arose in 1917 could not have been ascertained to be worthless in 1914, or at any time prior to the year 1917, whether the debtor corporation did or did not have any assets subsequent to July 9, 1914. The third ground suggested by the respondent is immaterial to the issue presented, as will appear from the matters referred to hereinbelow.

It may be noted at this point that the respondent has raised no specific objection to any item appearing on the account in question, with the exception of the last debit item of $9,350.95, and the last credit item of $10,000, both entered under date of May 31, 1917. At May 30, 1917, and just prior to the entry of the two items called in question by the respondent, said account showed a debit balance of $51,648.90, and in our opinion, the evidence adduced by the petitioner clearly establishes that said balance, which arose under the circumstances indicated in our findings of fact, represented a bona fide indebtedness due to it at that date, by the Kenilworth Sugar Co.

The petitioner was, during the years involved here, a family corporation, all of its stock being owned by the Burguieres brothers and sisters. The Kenilworth Sugar Co. the debtor corporation, was organized in 1909, and was controlled by the Burguieres interests, represented by the petitioner, and by the Pharr interests, each of which owned 150 shares of its stock.

The Kenilworth Sugar Co. operated a sugar factory and plantation located at Braithwaite Landing, or Kenilworth, about 18 miles below the City of New Orleans. The sugar factory, as well as the plantation, was leased from the United Railway & Trading Co., a British corporation, the lease contract being executed on the part of the lessees by three of the Burguieres and three of the Pharrs in their individual capacities, the Burguieres brothers acting for and in behalf of the petitioner. The arrangement under which the

properties were operated by the Kenilworth Sugar Co. is not definitely disclosed by the record. The venture did not prove successful in a financial way, and the lease on the sugar plantation was terminated in February, 1914. Thereafter, under date of July 9, 1914, the sugar factory, which up to that date had been operated by the debtor corporation, was subleased to the Canadian-American Sugar Refining Co., and the former company ceased active operations. Subsequently, and some time prior to May, 1917, the Canadian-American Sugar Refining Co. changed its name to the Kenilworth Sugar Refining Co.

The debtor corporation operated on funds supplied by the petitioner and the Pharr interests, and also on money borrowed by it from the bank, its notes being endorsed as sureties by the Burguieres and Pharrs individually. However, in all these transactions, the Burguieres brothers were acting for their corporation, the petitioner herein. Money was advanced by the petitioner to the debtor corporation, and its notes paid or other obligations discharged on the dates and in the amounts shown on the account set out in our findings of fact hereinabove. The debtor corporation also repaid to the petitioner certain amounts from time to time, with which it was credited as shown on the said account.

The evidence before us is very meagre with respect to the assets, if any, owned by the debtor corporation at any time. However, the record does, we think, quite clearly show that certain assets involved in this controversy were not at any time owned by said corporation. On May 21, 1913, a resolution was adopted at a special meeting of the directors of the debtor corporation, providing for the installation at the Kenilworth factory of the "Gordon-Weiss" process for refining sugar. This resolution provided that the Kenilworth Sugar Co. should have the free use of said process, but it was distinctly understood that said process was the property of "Messrs. Burguieres and Pharr," was to be paid for by them, and that any installation charge made by the sugar company was in turn to be met by Burguieres and Pharr; and further that it was distinctly understood that the sugar company was to act as the agent of Burguieres and Pharr in the premises.

It appears that thereafter the machinery necessary to operate the Gordon-Weiss process was installed, one-half of the cost being paid by the petitioner and charged on its books to an account styled "The Weiss Process." The debit balance of this account on May 31, 1917, was $9,350.95.

The principal witness for the petitioner, and the only one who testified respecting the assets of the debtor corporation, was Ernest A. Burguieres. On first being questioned about the matter, Burguieres stated that after July 9, 1914, the date on which the sugar factory was subleased to the Canadian-American Sugar Refining Co., the

Kenilworth Sugar Co., of which he was an officer, had no property or assets of any kind. This statement he confirmed and reiterated. Later, on further examination by petitioner's counsel, the witness stated that said company did possess assets after the date in question, consisting of machinery in the Kenilworth factory, but his testimony was so vague, indefinite and unsatisfactory that we are unable to give it weight. The witness could not state what the machinery consisted of, how or when it was acquired by the debtor corporation, or to what extent it included machinery other than that pertaining to the Gordon-Weiss process. Furthermore, this testimony apparently is in direct conflict with other facts established by the record.

Other than the testimony of Burguieres, there is no evidence before us to justify the conclusion that the Kenilworth Sugar Co. ever at any time owned any machinery at the Kenilworth factory, or ever at any time acquired any proprietary interest in the Gordon-Weiss process machinery. The record as presented establishes to our satisfaction that at a date certainly as early as the beginning of 1917, the debtor corporation possessed no assets of any kind and never thereafter acquired any. The uncontroverted evidence further shows that the Gordon-Weiss process machinery was paid for and owned by the petitioner and the Pharr interests, and that the petitioner charged the cost of its one-half interest therein to an account on its books styled "The Weiss Process."

In the early part of 1917, the petitioner and the Pharrs disposed of their last remaining interest in the original venture, and the outstanding obligations of the debtor corporation were discharged and its affairs wound up. The lease on the sugar lands had theretofore been terminated and the factory subleased to the Canadian-American Sugar Refining Co., which later changed its name to the Kenilworth Sugar Refining Co. The machinery at the factory was sold to the latter company, and for its interest therein the petitioner received 1,000 shares of stock of the vendee corporation having a par value of $100 per share. The stock was issued in the name of Ernest A. Burguieres, who held it as trustee for the petitioner. There is no evidence to show that the debtor corporation either sold the machinery or received the consideration therefor.

Upon the consummation of these transactions, there appeared upon the petitioner's books two accounts directly reflecting the results of its participation in the Kenilworth venture, namely, "The Weiss Process" account, which showed a debit balance of $9,350.95, and the account designated "Burguieres & Pharr—Kenilworth Sugar Company," which, prior to the transfer of the machinery account balance and the entry of the $10,000 credit, showed a debit balance of $51,648.90. The enterprise having been fully terminated, good accounting practice would seem to have required that the value of

the stock received by the petitioner be credited to its machinery account, and the credit balance then remaining transferred directly to profit and loss. Likewise, the debit balance of the Kenilworth Sugar Co. account, having been determined to be worthless and representing a loss, should have been charged to profit and loss. However, this procedure was not followed, but the balance of the machinery account, amounting to $9,350.95, was transferred to the Kenilworth Sugar Co. account, being explained in the journal entry as "transfer of accounts." The latter account was then credited with $10,000 on account of the stock received for the machinery, and the remaining debit balance of said account in the sum of $50,999.85 charged to profit and loss. Insofar as the closing of these accounts ultimately affected the petitioner's profit and loss account, the result would have been the same under either method, but the procedure followed resulted in distorting the apparent liability of the Kenilworth Sugar Co. to the petitioner, or the amount of the loss sustained by it in that connection.

For the reason that, as indicated above, the last debit item of $9,350.95 and the last credit item of $10,000 appearing on the Kenilworth Sugar Co. account were solely bookkeeping entries, having no substantial basis in fact, they should be disregarded in determining the amount of the indebtedness due from said corporation to the petitioner, and which represents the deductible loss sustained.

That mere bookkeeping entries can not serve either to increase or decrease tax liability is too well settled to require discussion here. See *Doyle* v. *Mitchell Brothers Co.*, 247 U. S. 179; *Douglas* v. *Edwards*, 298 Fed. 229; *Huning Mercantile Co.*, 1 B. T. A. 130; *Henry Myer Thread Manufacturing Co.*, 2 B. T. A. 665; *Pacific Pipe & Supply Co.*, 2 B. T. A. 870; *Fort Wayne Engineering & Manufacturing Co.*, 2 B. T. A. 1223; *Krieg Tanning Co.*, 4 B. T. A. 1081.

The respondent concedes that the debt in question was charged off the petitioner's books and written out of its assets in 1917.

The Revenue Act of 1916, as amended, provides in section 12 (a) that, in the case of a corporation organized in the United States, the net income shall be ascertained by deducting from the gross amount of its income received within the year from all sources, all losses actually sustained and charged off within the year, and not compensated by insurance or otherwise.

Since the facts in this case establish (1) that the account hereinabove referred to represented a bona fide indebtedness due to the petitioner, which arose in 1917, and (2) was properly ascertained to be worthless and charged off within that year, we must conclude that the petitioner has discharged its burden of showing that it actually sustained and charged off in 1917 a loss equal to the amount of the indebtedness in fact due to it, without regard to the erroneous bookkeeping entries.

Accordingly, the deficiency should be redetermined on the basis of a net income ascertained by deducting from gross income the amount of $51,648.90.

*Judgment will be entered under Rule 50.*